**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Southern Division**

| | | |
|---|---|---|
| **DORIS GIBSON,** | * | |
| | * | |
| **Plaintiff,** | * | |
| | * | **Civil No. TMD 14-467** |
| **v.** | * | |
| | * | |
| | * | |
| **CAROLYN W. COLVIN,** | * | |
| **Acting Commissioner of Social Security,** | * | |
| | * | |
| **Defendant.** | * | |

**\*\*\*\*\*\*\*\*\*\*\*\***

## MEMORANDUM OPINION GRANTING DEFENDANT'S
## MOTION FOR SUMMARY JUDGMENT

Doris Gibson ("Plaintiff") seeks judicial review under 42 U.S.C. §§ 405(g) and 1383(c)(3) of a final decision of the Commissioner of Social Security ("Defendant" or the "Commissioner") denying her applications for disability insurance benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act. Before the Court are Plaintiff's Motion for Summary Judgment (ECF No. 19) and Defendant's Motion for Summary Judgment (ECF No. 24).[1]  Plaintiff contends that the administrative record does not contain substantial evidence to support the Commissioner's decision that she is not disabled.  No hearing is necessary.  L.R. 105.6.  For the reasons that follow, Defendant's Motion for Summary Judgment (ECF No. 24) is **GRANTED**, Plaintiff's Motion for Summary Judgment (ECF No. 19) is **DENIED**, and the Commissioner's final decision is **AFFIRMED**.

---

[1] The Fourth Circuit has noted that, "in social security cases, we often use summary judgment as a procedural means to place the district court in position to fulfill its appellate function, not as a device to avoid nontriable issues under usual Federal Rule of Civil Procedure 56 standards." *Walls v. Barnhart*, 296 F.3d 287, 289 n.2 (4th Cir. 2002).  For example, "the denial of summary judgment accompanied by a remand to the Commissioner results in a judgment under sentence four of 42 U.S.C. § 405(g), which is immediately appealable." *Id.*

# I

## Background

Plaintiff was born in 1971, has a high-school education, and previously worked as a retail sales clerk, cashier, and customer services representative.  R. at 31, 42-43, 279, 287.  On August 26, 2008, Plaintiff protectively applied for DIB and SSI, alleging disability beginning on May 25, 2008, due to asthma, diabetes, sleep apnea, high blood pressure, and obesity.  R. at 74, 204-14, 278.  The Commissioner denied Plaintiff's applications initially and again on reconsideration, so Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  R. at 66-69, 111-15, 118-24.  On June 17, 2010, ALJ Eugene Bond held a hearing at which Plaintiff and a vocational expert ("VE") testified.  R. at 39-49.  On July 26, 2010, the ALJ issued a decision finding Plaintiff not disabled from May 25, 2008, through the date of the decision.  R. at 70-97.  On April 9, 2012, the Appeals Council granted Plaintiff's request for review, vacated the ALJ's decision, and remanded the case for further proceedings.  R. at 98-102, 156-57.

On September 20, 2012, the ALJ held a supplemental hearing at which Plaintiff and another VE testified.  R. at 50-63.  Plaintiff at the hearing amended her alleged onset date of disability to June 16, 2010.  R. at 52.  On October 24, 2012, the ALJ issued a decision finding Plaintiff not disabled from June 16, 2010, through the date of the decision.  R. at 21-38.  Plaintiff sought review of this decision by the Appeals Council, which denied Plaintiff's request for review on December 16, 2013.  R. at 1-7.  The ALJ's decision thus became the final decision of the Commissioner.  *See* 20 C.F.R. §§ 404.981, 416.1481; *see also Sims v. Apfel*, 530 U.S. 103, 106-07, 120 S. Ct. 2080, 2083 (2000).

On February 19, 2014, Plaintiff filed a complaint in this Court seeking review of the Commissioner's decision.  Upon the parties' consent, this case was transferred to a United States

Magistrate Judge for final disposition and entry of judgment. The case subsequently was reassigned to the undersigned. The parties have briefed the issues, and the matter is now fully submitted.

## II

## Summary of Evidence

### A.    State Agency Medical Consultants

Before Plaintiff's amended alleged onset date of disability, a state agency consultant, G. Albright, M.D., assessed Plaintiff's physical residual functional capacity ("RFC") on December 2, 2008. R. at 459-66. Dr. Albright opined that Plaintiff could (1) lift and/or carry 10 pounds occasionally and 10 pounds frequently; (2) stand and/or walk for a total of at least two hours in an eight-hour workday; (3) sit for about six hours in an eight-hour workday; and (4) perform limited pushing and/or pulling in the lower extremities. R. at 460. Plaintiff occasionally could balance, stoop, kneel, crouch, crawl, and climb ramps and stairs (but never ladders, ropes, or scaffolds). R. at 461. Plaintiff was to avoid concentrated exposure to fumes and odors, but she had no manipulative, visual, or communicative limitations. R. at 462-63.

On March 17, 2009, another state agency medical consultant, A.R. Totoonchie, M.D., also assessed Plaintiff's physical RFC. R. at 467-74. Dr. Totoonchie opined that Plaintiff could (1) lift and/or carry 10 pounds occasionally and fewer than 10 pounds frequently; (2) stand and/or walk for a total of at least two hours in an eight-hour workday; (3) sit for about six hours in an eight-hour workday; and (4) perform limited pushing and/or pulling in the lower extremities. R. at 468. Plaintiff occasionally could balance, stoop, kneel, crouch, crawl, and climb ramps and stairs (but never ladders, ropes, or scaffolds). R. at 469. Although she had no

visual or communicative limitations, Plaintiff's reaching was limited, and she was to avoid

moderate exposure to fumes and odors because of her asthma.  R. at 470-71.

**B.     Hearing Testimony**

**1.     Plaintiff's Testimony**

In his decision, the ALJ reviewed Plaintiff's testimony from the supplemental hearing:

> At the hearing, [Plaintiff] testified that she stopped working in May 2007 or May 2008.  She testified that she has tried looking for jobs since she stopped working.

> Additionally, [Plaintiff] testified that she [weighs] approximately 325 pounds and she is 5 feet, 3 inches tall.

> In terms of her activities of daily living, she testified that she cooks, cleans, takes care of her kids, shops for groceries, and drives a car.  On a typical day, she testified that she takes her daughter to [the] school bus stop, fix[es] breakfast, watch[es] the morning news, check[s] emails, wait[s] for [her] brother's caretaker to come to the house, surf[s] the Internet, take[s] a nap, pick[s] up her daughter from the bus stop, and prepare[s] dinner.  She testified that she lives in the same house as her mother and Medicaid [sic].  She indicated that her brother has severe cerebral palsy and that a caretaker comes to the house to take care of him.

> Further, [Plaintiff] testified that she suffers from uncontrolled diabetes.  She testified that [she] has Maryland Medicaid, which does not cover for her to see a diabetes specialist.  She testified that she experiences tingling and fluid in her feet due to diabetes.  She also testified that she uses the restroom frequently.

> To treat her sleep apnea, she uses a CPAP machine.

R. at 29; *see* R. at 53-58.

**2.     VE Testimony**

According to the VE, a hypothetical person with Plaintiff's same age, education, and

work experience with the capacity to do unskilled, sedentary work[2] with a sit-stand option at will

---

[2] "Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time."  20 C.F.R. §§ 404.1568(a), 416.968(a).  "Sedentary

and limited to general public contact could perform the jobs of unarmed security worker, small-parts inserter, or table worker.  R. at 59.  Such a person limited instead to unskilled, light work[3] could perform the jobs of packer and packaging worker, grading and sorting worker, or assembly worker.  R. at 60.  The VE's testimony is consistent with the *Dictionary of Occupational Titles*,[4] except for his testimony about the sit-stand option, which is based on his experience as a vocational consultant.  R. at 61.  An individual's performance or productivity level falling 20% or greater below a job's requirement would not constitute substantial gainful activity.  R. at 61.

### III

### Summary of ALJ's Decision

On October 24, 2012, the ALJ found that Plaintiff (1) had not engaged in substantial gainful activity since the amended alleged onset date of disability of June 16, 2010; and (2) had an impairment or a combination of impairments considered to be "severe" on the basis of the requirements in the Code of Federal Regulations; but (3) did not have an impairment or a combination of impairments meeting or equaling one of the impairments set forth in 20 C.F.R. pt. 404, subpt. P, app. 1; and (4) was unable to perform her past relevant work; but (5) could perform other work in the national economy, such as an unarmed security worker, small-parts

---

work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools."  *Id.* §§ 404.1567(a), 416.967(a).

[3] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds."  20 C.F.R. §§ 404.1567(b), 416.967(b).

[4] "The Social Security Administration has taken administrative notice of the *Dictionary of Occupational Titles*, which is published by the Department of Labor and gives detailed physical requirements for a variety of jobs."  *Massachi v. Astrue*, 486 F.3d 1149, 1152 n.8 (9th Cir. 2007); *see DeLoatche v. Heckler*, 715 F.2d 148, 151 n.2 (4th Cir. 1983); 20 C.F.R. §§ 404.1566(d)(1), 416.966(d)(1).  "Information contained in the [*Dictionary of Occupational Titles*] is not conclusive evidence of the existence of jobs in the national economy; however, it can be used to establish a rebuttable presumption."  *English v. Shalala*, 10 F.3d 1080, 1085 (4th Cir. 1993).

inserter, or table worker.  R. at 27-33.  The ALJ accordingly found that she was not disabled

from June 16, 2010, through the date of the decision.  R. at 33.

In so finding, the ALJ found that Plaintiff had the RFC "to perform sedentary work as

defined in 20 CFR 404.1567(a) and 416.967(a) except with the following limitations.  [Plaintiff]

has the capacity to perform sedentary exertional work with a sit/stand option at will and limited

general public contact."  R. at 28.  Regarding Plaintiff's credibility, the ALJ found that her

"medically determinable impairments could reasonably be expected to cause the alleged

symptoms; however, [her] statements concerning the intensity, persistence and limiting effects of

these symptoms are not credible to the extent they are inconsistent with the above residual

functional capacity assessment."  R. at 29.  The ALJ found that Plaintiff's

> activities of daily living are inconsistent with her claims of totally disabling
> limitations.  [Plaintiff] can complete her activities of daily living independently.
> At the hearing, [Plaintiff] testified that she cooks, cleans, takes care of her kids,
> shops for her groceries, and drives a car.  On a typical day, she testified that she
> takes her daughter to [the] school bus stop, fix[es] breakfast, watch[es] the
> morning news, check[s] emails, wait[s] for [her] brother's caretaker to come to
> the house, surf[s] the Internet, take[s] a nap, pick[s] up her daughter from the bus
> stop, and prepare[s] dinner.  Such activities of daily [living] are inconsistent with
> [Plaintiff's] allegations of disabling limitations and further diminish her
> credibility.
>
> . . . As of the amended onset date, the undersigned notes that the medical
> evidence with respect to [Plaintiff's] physical impairments consists almost
> entirely of consultative examinations rather than any ongoing treatment for
> diabetes and asthma.  Such a lack of any documented treatment history is
> inconsistent with the alleged severity of her mental [sic] condition.  There is only
> one Exhibit pertaining to 2011 and there is no evidence from 2012.  This
> diminishes [Plaintiff's] credibility that she suffers from a disability for a 12-
> month continuous period.  Therefore, the undersigned finds that there is no
> evidence that [Plaintiff's] physical impairments have resulted in any functional
> limitations.
>
> . . . .
>
> In short, while severe conditions exist, the objective findings simply do
> not justify the disabling limitations that [Plaintiff] alleges in her testimony.  The

evidence does not justify a finding of disability as the severity of her medical conditions does not require surgery, hospitalization, or extensive medical treatment. Her disability could only be based upon subjective symptoms which the undersigned finds are not fully credible [except] as to the extent of the residual functional capacity determined by the undersigned Administrative Law Judge.

R. at 30-31.

## IV

## Disability Determinations and Burden of Proof

The Social Security Act defines a disability as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905. A claimant has a disability when the claimant is "not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists . . . in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows a five-step sequential evaluation process outlined in the regulations. 20 C.F.R. §§ 404.1520, 416.920; *see Barnhart v. Thomas*, 540 U.S. 20, 24-25, 124 S. Ct. 376, 379-380 (2003). "If at any step a finding of disability or nondisability can be made, the [Commissioner] will not review the claim further." *Thomas*, 540 U.S. at 24, 124 S. Ct. at 379; *see* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant has the burden of production and proof at steps one through four. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5, 107 S. Ct. 2287, 2294 n.5 (1987); *Radford v. Colvin*, 734 F.3d 288, 291 (4th Cir. 2013).

First, the Commissioner will consider a claimant's work activity.  If the claimant is engaged in substantial gainful activity, then the claimant is not disabled.  20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see whether the claimant has a "severe" impairment, i.e., an impairment or combination of impairments that significantly limits the claimant's physical or mental ability to do basic work activities.  *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995); *see* 20 C.F.R. §§ 404.1520(c), 404.1521(a), 416.920(c), 416.921(a).[5]

Third, if the claimant has a severe impairment, then the Commissioner will consider the medical severity of the impairment.  If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled, regardless of age, education, and work experience.  20 C.F.R.  §§ 404.1520(a)(4)(iii), 404.1520(d), 416.920(a)(4)(iii), 416.920(d); *see Radford*, 734 F.3d at 293.

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's RFC to determine the claimant's "ability to meet the physical, mental, sensory, and other requirements" of the claimant's past relevant work.  20 C.F.R.  §§ 404.1520(a)(4)(iv), 404.1545(a)(4), 416.920(a)(4)(iv), 416.945(a)(4).  RFC is a measurement of the most a claimant can do despite his or her limitations.  *Hines v. Barnhart*, 453 F.3d 559, 562 (4th Cir. 2006); *see* 20 C.F.R.

---

[5] The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs."  20 C.F.R. §§ 404.1521(b), 416.921(b).  These abilities and aptitudes include (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting.  *Id.* §§ 404.1521(b)(1)-(6), 416.921(b)(1)-(6); *see Yuckert*, 482 U.S. at 141, 107 S. Ct. at 2291.

§§ 404.1545(a)(1), 416.945(a)(1).   The claimant is responsible for providing evidence the Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources."   20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3).   The Commissioner also will consider certain non-medical evidence and other evidence listed in the regulations.   *See id.*   If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled.   *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

Fifth, if the claimant's RFC as determined in step four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to prove that there is other work that the claimant can do, given the claimant's RFC as determined at step four, age, education, and work experience.   *See Hancock v. Astrue*, 667 F.3d 470, 472-73 (4th Cir. 2012). The Commissioner must prove not only that the claimant's RFC will allow the claimant to make an adjustment to other work, but also that the other work exists in significant numbers in the national economy.   *See Walls*, 296 F.3d at 290; 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).   If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, then the Commissioner will find that the claimant is not disabled.   If the claimant cannot make an adjustment to other work, then the Commissioner will find that the claimant is disabled.   20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

# V

## Substantial Evidence Standard

The Court reviews an ALJ's decision to determine whether the ALJ applied the correct legal standards and whether the factual findings are supported by substantial evidence. *See Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). In other words, the issue before the Court "is not whether [Plaintiff] is disabled, but whether the ALJ's finding that [Plaintiff] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." *Id.* The Court's review is deferential, as "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Under this standard, substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion. *See Hancock*, 667 F.3d at 472; *see also Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971).

In evaluating the evidence in an appeal of a denial of benefits, the court does "not conduct a *de novo* review of the evidence," *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986), or undertake to reweigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. *Hancock*, 667 F.3d at 472. Rather, "[t]he duty to resolve conflicts in the evidence rests with the ALJ, not with a reviewing court." *Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996). When conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ. *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam).

# VI

## Discussion

Plaintiff contends that the ALJ erroneously assessed her RFC contrary to Social Security Ruling[6] ("SSR") 96-8p, 1996 WL 374184 (July 2, 1996).  Pl.'s Mem. Supp. Mot. Summ. J. 3-8, ECF No. 19-1 (citing, *inter alia*, *Fleming v. Barnhart*, 284 F. Supp. 2d 256, 271-72 (D. Md. 2003)).  She maintains that the ALJ failed to perform properly a function-by-function assessment of her ability to perform the physical and mental demands of work because the ALJ's decision failed to set forth a narrative discussion setting forth how the evidence supported each conclusion.  *Id.* at 6.  In particular, Plaintiff asserts that the ALJ failed to explain the basis for the sit-stand option at will and need for limited public contact in the RFC assessment, failed to include limitations from her severe impairments of asthma and sleep apnea in the RFC assessment.  Id. at 6-8.  Plaintiff also contends that the ALJ erroneously assessed her subjective complaints and failed to develop properly the administrative record.  *Id.* at 8-16.

A.      **ALJ's RFC Assessment**

SSR 96-8p explains how adjudicators should assess RFC and instructs that the RFC

> "assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions" listed in the regulations.  "Only after that may [residual functional capacity] be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy."  The Ruling further explains that the residual functional capacity "assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific

---

[6] Social Security Rulings are "final opinions and orders and statements of policy and interpretations" that the Social Security Administration has adopted.  20 C.F.R. § 402.35(b)(1).  Once published, these rulings are binding on all components of the Social Security Administration.  *Heckler v. Edwards*, 465 U.S. 870, 873 n.3, 104 S. Ct. 1532, 1534 n.3 (1984); 20 C.F.R. § 402.35(b)(1).   "While they do not have the force of law, they are entitled to deference unless they are clearly erroneous or inconsistent with the law."  *Pass*, 65 F.3d at 1204 n.3.

medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily
activities, observations)."

*Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (alteration in original) (footnote omitted)

(citations omitted).   The Fourth Circuit has held, however, that a per se rule requiring remand

when the ALJ does not perform an explicit function-by-function analysis "is inappropriate given

that remand would prove futile in cases where the ALJ does not discuss functions that are

'irrelevant or uncontested.'"   *Id.* (quoting *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013)

(per curiam)).   Rather, remand may be appropriate "where an ALJ fails to assess a claimant's

capacity to perform relevant functions, despite contradictory evidence in the record, or where

other inadequacies in the ALJ's analysis frustrate meaningful review."   *Id.* (quoting *Cichocki*,

729 F.3d at 177).   The court in *Mascio* concluded that remand was appropriate because it was

"left to guess about how the ALJ arrived at his conclusions on [the claimant's] ability to perform

relevant functions" because the ALJ had "said nothing about [the claimant's] ability to perform

them for a full workday," despite conflicting evidence as to the claimant's RFC that the ALJ did

not address.   *Id.* at 637.

Plaintiff contends that remand is warranted because the ALJ did not explain the basis for

the sit-stand option and her need for limited general public contact in the RFC assessment.   Pl.'s

Mem. Supp. Mot. Summ. J. 6, ECF No. 19-1.   Plaintiff fails to demonstrate prejudice from the

ALJ's inclusion in the RFC assessment of these limitations, however.   *See Farrell v. Colvin*,

Civil No. TMD 11-2995, 2014 WL 1764928, at *13 & n.15 (D. Md. Apr. 30, 2014).   Moreover,

there is no evidence that the absence of a sit-stand option or a limitation involving limited

general public contact in the hypothetical questions to the VE would have resulted in a different

finding by the ALJ regarding the availability of jobs in the national economy.   *See id.* at *13

n.15.   Remanding this case for the Commissioner to explain the bases for these limitations in the

RFC assessment thus would be futile. *See id.* (citing, *inter alia*, *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006) (stating that ALJ's error is harmless if it is "inconsequential to the ultimate nondisability determination")).

Plaintiff next asserts that the ALJ failed to include in the RFC assessment any limitations related to her asthma and sleep apnea, which the ALJ found to be severe impairments (R. at 27). Pl.'s Mem. Supp. Mot. Summ. J. 6-8, ECF No. 19-1. "To the extent [Plaintiff] suggests that a finding of severe impairment at Step 2 necessarily requires limitations on a claimant's ability to perform basic work activities, this argument has no merit," however. *Burkstrand v. Astrue*, 346 F. App'x 177, 180 (9th Cir. 2009) (citing *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228-29 (9th Cir. 2009)). As noted in Part IV above, the Commissioner determines at step two of the five-step sequential evaluation process whether the claimant has a medically severe impairment or combination of impairments. "[T]he step-two inquiry is a de minimis screening device to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (citing *Yuckert*, 482 U.S. at 153-54, 107 S. Ct. at 2297-98); *see Felton-Miller v. Astrue*, 459 F. App'x 226, 230 (4th Cir. 2011) (per curiam) ("Step two of the sequential evaluation is a threshold question with a de minimis severity requirement."). Accordingly, "[t]he findings that the [Commissioner] must make at steps two and four . . . are quite different." *Taylor v. Astrue*, Civil Action No. BPG-11-0032, 2012 WL 294532, at *8 (D. Md. Jan. 31, 2012). "At step four, on the other hand, the [Commissioner] must look to all the evidence on record and determine more precisely how, if at all, the claimant's impairments limit her ability to work." *Id.* "It is possible, therefore, for [the Commissioner] to find at step two that a claimant's condition is severe—because the medical evidence does not conclusively prove otherwise—and yet at step four find no substantial evidence that the condition actually limits the claimant's ability to

work." *Id.*; *see Walker v. Colvin*, No. C13-3021-MWB, 2014 WL 1348016, at *7 (N.D. Iowa Apr. 3, 2014) ("A finding of a severe impairment at Step Two does not require the ALJ to provide related functional limitations at Step Four."), *report and recommendation adopted*, No. C13-3021-MWB, 2014 WL 2884028 (N.D. Iowa June 25, 2014); *Copes v. Comm'r, Soc. Sec. Admin.*, Civil No. SAG-11-3487, 2013 WL 1809231, at *1 (D. Md. Apr. 26, 2013) ("[A]n ALJ is not required to include a corresponding limitation for each severe impairment.").

As Defendant points out, the ALJ found no evidence of consistent treatment for Plaintiff's asthma or evidence of frequent asthma attacks or hospitalizations as of the amended onset date of disability.  R. at 30.  The ALJ also found that Plaintiff's complaints regarding the frequency, severity, and duration of her fatigue, pain, and difficulty with sleeping were inconsistent with the objective medical evidence and other evidence of record.  R. at 30.  The ALJ further found that Plaintiff's complaints did not justify any further limitations than those set forth in the RFC assessment.  R. at 30.  The ALJ also found no evidence that Plaintiff's sleep apnea caused any disabling symptoms or limitations.  R. at 31.  Because the ALJ found that, "[i]n short, while severe conditions exist, the objective findings simply do not justify the disabling limitations that [Plaintiff] alleges in her testimony" (R. at 31), the ALJ did not err at steps two and four.  In addition, as Defendant points out, any error in failing to include environmental limitations from Plaintiff's asthma in the RFC assessment is harmless, as "there is no indication that the ALJ would have reached a different conclusion regarding the availability of jobs in the national and regional economies." *Farnsworth v. Astrue*, 604 F. Supp. 2d 828, 837 (N.D.W. Va. 2009); *see Coles v. Astrue*, Civil No. JKS 08-321, 2009 WL 3380334, at *3 (D. Md. Oct. 16, 2009) ("[E]ven if the ALJ had adopted [the state agency consultant's] non-exertional limitations, [the claimant] would still be capable of light work and the RFC would be

unchanged.  *See* Soc. Sec. Ruling 83-14 at *4-5 (certain non-exertional limitations, including but not limited to the 'inability to ascend or descend scaffolding, poles, and ropes' do not significantly affect the ability to perform work).");  *see also Reid v. Comm'r of Soc. Sec.*, 769 F.3d 861, 865 (4th Cir. 2014) ("[The claimant] has failed to point to *any* specific piece of evidence not considered by the Commissioner that might have changed the outcome of his disability claim.").  Plaintiff's argument thus is unavailing.

Plaintiff nonetheless maintains that the ALJ failed to address her ability to perform work-related functions for an entire workday.  Pl.'s Mem. Supp. Mot. Summ. J. 8, ECF No. 19-1 (citing *Mascio*, 780 F.3d at 636-37).  The court in *Mascio*, however, noted that remand was necessary in that case because the ALJ had failed to address conflicting evidence regarding the claimant's RFC and because the court was "left to guess about how the ALJ arrived at his conclusions on [the claimant's] ability to perform relevant functions."  *Mascio*, 780 F.3d at 637. Here, the ALJ found that Plaintiff had the RFC to perform sedentary work with a sit-stand option at will and requiring limited general public contact (R. at 28), thus finding that Plaintiff could perform work on a regular and continuing basis, or eight hours a day for five days.  *See Hines*, 453 F.3d at 563 (stating that ALJ's determination of claimant's RFC implicitly includes finding that claimant is able to work eight-hour day).  In doing so, the ALJ found that Plaintiff's daily living activities were inconsistent with her claims of totally disabling limitations; the evidence did not show ongoing treatment for diabetes and asthma; no evidence showed diabetes-related impairments, complications, or hospitalizations; and no evidence showed frequent asthma attacks, hospitalizations, or complications.  R. at 30.  Plaintiff points to no evidence in the record that conflicts with the ALJ's RFC assessment or that would support a more restrictive RFC assessment or that she would be unable to perform sedentary work with a sit-stand option at will

and limited general public contact.  For these reasons, Plaintiff's contention regarding the ALJ's assessment of her RFC is without merit.

**B.**     **ALJ's Credibility Determination**

Plaintiff next contends that the ALJ erroneously assessed her subjective complaints.  Pl.'s Mem. Supp. Mot. Summ. J. 8-12, ECF No. 19-1.  Although "[a]n individual does not have to be totally helpless or bedridden in order to be found disabled under the Social Security Act," *Totten v. Califano*, 624 F.2d 10, 11 (4th Cir. 1980), an ALJ may rely upon evidence of a claimant's daily activities to evaluate subjective complaints of pain, as "[t]he only fair manner to weigh a subjective complaint of pain is to examine how the pain affects the routine of life."  *Mickles v. Shalala*, 29 F.3d 918, 921 (4th Cir. 1994); *see* 20 C.F.R. §§ 404.1529(c)(3)(i), 416.929(c)(3)(i). Here, Plaintiff testified at the supplemental hearing in September 2012 that she drove, cooked, and cleaned and shopped for groceries with her children.  R. at 55.  She also testified that, in a typical day, she woke up at 5:30 a.m. to prepare her daughter for school and bring her to the bus stop at 6:30 a.m., prepared breakfast, watched news on the television, checked her emails, napped, watched more television, ate lunch at noon, picked up her daughter at the bus stop at 3:00 p.m., prepared dinner with her daughter's assistance, and slept at 8:00 p.m.  R. at 55. Substantial evidence thus supports the ALJ's finding that Plaintiff's activities belied her allegations regarding the functional limitations of her impairments (R. at 30).  *See Johnson*, 434 F.3d at 658 ("The ALJ also found [the claimant's] complaints of pain to be inconsistent with her testimony of her routine activities.  [The claimant] testified that she attends church twice a week, reads books, watches television, cleans the house, washes clothes, visits relatives, feeds the family pets, cooks, manages her household finances, and performs the stretches recommended by her chiropractor.  [The claimant] also testified that she can lift approximately ten pounds.  The

ALJ logically reasoned that the ability to engage in such activities is inconsistent with [the claimant's] statements of excruciating pain and her inability to perform such regular movements like bending, sitting, walking, grasping, or maintaining attention."); *Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir. 1986) (per curiam) (upholding finding of no disability where claimant managed his household, grocery shopped, cooked, washed dishes, and walked to town every day); *Stitely v. Colvin*, __ F. App'x __, No. 14-2302, 2015 WL 4621292, at *1 (4th Cir. Aug. 4, 2015) (per curiam) ("[The claimant] contends that the ALJ's credibility determination was erroneous because the ALJ improperly found that [the claimant's] complaints were inconsistent with his daily activities.  In his written submissions and his testimony before the ALJ, [the claimant] reported that he could attend to personal care, count change, watch television, wash dishes, play video and board games, prepare simple meals, and shop.  In addition, although he stated at the hearing that he could no longer fish or ride a motorcycle, he reported performing these activities after his alleged onset date.  We find that the ALJ's conclusion that these activities were inconsistent with his complaints of constant pain and inability to breathe was well within the ALJ's discretion."); SSR 96-7p, 1996 WL 374186, at *5 (July 2, 1996) (ALJ must consider factors such as consistency of claimant's statements with other information in record, including consistency of claimant's own statements).

Plaintiff asserts, however, that the ALJ did not address her testimony from her prior hearing in June 2010 and did not address her testimony in September 2012 regarding her need for assistance with cooking, cleaning, and grocery shopping.  Pl.'s Mem. Supp. Mot. Summ. J. 12, ECF No. 19-1.  According to Plaintiff, remand is warranted because the ALJ did not "explain how he decided which of [her] statements to believe and which to discredit."  *Id.* (quoting *Mascio*, 780 F.3d at 640).  "[T]here is no rigid requirement that the ALJ specifically refer to

every piece of evidence in his decision," *Reid*, 769 F.3d at 865 (quoting *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (per curiam)), but, in any event, Plaintiff acknowledges that her "admitted activities at her supplemental hearing were greater in scope than at her previous hearing" in June 2010. Pl.'s Mem. Supp. Mot. Summ. J. 12, ECF No. 19-1. Plaintiff has not shown that her testimony from either hearing is inconsistent with performing sedentary work with a sit-stand option at will and limited general public contact, and she "provides no analysis of how a 'more detailed' assessment . . . might have resulted in a different outcome." *Seifert v. Comm'r, Soc. Sec. Admin.*, Civil No. SAG-11-1051, 2013 WL 1881065, at *2 (D. Md. May 2, 2013).

Plaintiff further asserts that remand is warranted because the ALJ's finding in his decision that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [her] statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment" (R. at 29) "'gets things backwards' by implying 'that ability to work is determined first and is then used to determine the claimant's credibility.'" *Mascio*, 780 F.3d at 639 (quoting *Bjornson v. Astrue*, 671 F.3d 640, 645 (7th Cir. 2012) (Posner, J.)). Rather, the ALJ should compare the claimant's alleged functional limitations from pain to the other evidence in the record, not to the claimant's RFC. *See id.* "[A] claimant's pain and residual functional capacity are not separate assessments to be compared with each other. Rather, an ALJ is required to consider a claimant's pain as part of his analysis of residual functional capacity." *Id.* In this case, however, the ALJ's use of the problematic boilerplate language does not require remand because the ALJ "properly analyzed [Plaintiff's] credibility elsewhere" (R. at 29-31). *Id.*; *see, e.g.*, *Sevens v. Comm'r, Soc. Sec. Admin.*, Civil No. SAG-14-

1900, 2015 WL 2402821, at *2 (D. Md. May 19, 2015).  In short, substantial evidence supports the determination of Plaintiff's credibility by the ALJ, who in this case applied the correct legal standards.

**C.      ALJ's Duty to Develop the Record**

Plaintiff finally contends that the ALJ failed in his duty to develop the record during the hearings because the ALJ failed to question adequately Plaintiff regarding her impairments and limitations.  Pl.'s Mem. Supp. Mot. Summ. J. 13-14, ECF No. 19-1 (citing, *inter alia*, *Fleming*, 284 F. Supp. 2d at 272).  According to Plaintiff, the ALJ thus "failed in his duty to 'scrupulously and conscientiously' probe into, inquire of, and explore for all the relevant facts," and so failed to develop properly the administrative record.  *Id.* at 14 (relying on *Walker v. Harris*, 642 F.2d 712 (4th Cir. 1981)).  For the reasons stated below, Plaintiff's contention is without merit.

"[T]he ALJ has a duty to explore all relevant facts and inquire into the issues necessary for adequate development of the record, and cannot rely only on the evidence submitted by the claimant when that evidence is inadequate."  *Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986).  In cases where the claimant is not represented by counsel, "[w]here the ALJ fails in his duty to fully inquire into the issues necessary for adequate development of the record, and such failure is prejudicial to the claimant, the case should be remanded."  *Marsh v. Harris*, 632 F.2d 296, 300 (4th Cir. 1980).  "The length or brevity of a benefits hearing . . . is not dispositive of whether or not the ALJ has met his or her obligation to adequately develop the record."  *Thompson v. Sullivan*, 987 F.2d 1482, 1492 (10th Cir. 1993).  The more important inquiry is whether the ALJ asked sufficient questions to ascertain (1) the nature of a claimant's alleged impairments, (2) what ongoing treatment and medication the claimant is receiving, and (3) the impact of the alleged impairment on a claimant's daily routine and activities.  *Musgrave v.*

*Sullivan*, 966 F.2d 1371, 1375 (10th Cir. 1992). "[W]hen the claimant is represented by counsel at the administrative hearing, the ALJ should ordinarily be entitled to rely on the claimant's counsel to structure and present claimant's case in a way that the claimant's claims are adequately explored." *Hawkins v. Chater*, 113 F.3d 1162, 1167 (10th Cir. 1997). "Thus, in a counseled case, the ALJ may ordinarily require counsel to identify the issue or issues requiring further development." *Id.*

In this case, the ALJ inquired at the hearings about the nature of Plaintiff's daily living activities. R. at 43-44, 54-55. In response to her attorney's questions, Plaintiff testified about her need for a CPAP machine, her diabetes, and her hypertension. R. at 44-45, 56-57. Exhibits in the record elaborated on Plaintiff's impairments and how they allegedly affected her activities and exertional limitations. R. at 328-491. Plaintiff thus fails to demonstrate how further questioning, a longer hearing, or a fuller record reasonably would have led to a different decision. *Cf. Sims v. Harris*, 631 F.2d 26, 28 (4th Cir. 1980). In this case, where Plaintiff was represented by counsel who had the opportunity to inquire into the issues requiring further development, the Court concludes that the ALJ satisfied his duty to develop the record. *Cf. Walker*, 642 F.2d at 714 (holding that claimant suffered clear prejudice from absence of counsel and from ALJ's passive role); *Fleming*, 284 F. Supp. 2d at 276 ("[W]here absence of counsel creates clear prejudice or unfairness to claimant, a remand to the [Commissioner] is proper.").

Plaintiff also argues that the ALJ failed to develop the record by failing to order a consultative examination to evaluate and determine the severity of her impairments. Pl.'s Mem. Supp. Mot. Summ. J. 14-16, ECF No. 19-1. Although an ALJ has a duty to develop adequately the record on all relevant facts and issues before making a final decision, *Cook*, 783 F.2d at 1173, the standard for ordering consultative examinations is when the evidence as a whole is

insufficient to support a determination or decision on the claim or when there is an inconsistency

in the evidence.   20 C.F.R. §§ 404.1519a(b), 416.919a(b).   In other words, the need for a

consultative examination arises if, for example, "[t]he additional evidence needed is not

contained in the records of [the claimant's] medical sources"; "[t]he evidence that may have been

available from [the claimant's] treating or other medical sources cannot be obtained for reasons

beyond [the claimant's] control, such as death or noncooperation of a medical source"; "[h]ighly

technical or specialized medical evidence that [the Commissioner needs] is not available from

[the claimant's] treating or other medical sources"; or "[t]here is an indication of a change in [the

claimant's] condition that is likely to affect [the claimant's] ability to work," but the current

severity of the claimant's impairment is not established.   *Id.* §§ 404.1519a(b)(1)-(4),

416.919a(b)(1)-(4).

> Here, the ALJ

> did not discount [Plaintiff's] limitations, as it found that she did in fact have severe impairments that prevented her from performing her past relevant work.  In light of the substantial evidence in the record, including the vocational expert's testimony, the ALJ had the necessary information to determine [Plaintiff's] impairments, her residual functional capacity, and her ability to work.  [The Court notes] that the task of determining a claimant's residual functional capacity and ability to work is within the province of the ALJ, not of doctors.  Moreover, [Plaintiff] has not shown that she suffered prejudice as a result of any failure of the ALJ to perform further factfinding, because there is no evidence [the] ALJ's decision would have changed in light of any additional information.  Consequently, the ALJ did not err by not requesting an additional consultative examination . . . .

*Robinson v. Astrue*, 365 F. App'x 993, 999 (11th Cir. 2010) (per curiam).   Thus, Plaintiff's

contention that the ALJ failed to develop the record by failing to order a consultative

examination is unavailing.

In sum, substantial evidence supports the decision of the ALJ, who applied the correct

legal standards here.   Thus, Defendant's Motion for Summary Judgment is **GRANTED**,

Plaintiff's Motion for Summary Judgment is **DENIED**, and the Commissioner's final decision is **AFFIRMED**.

**VII**

**<u>Conclusion</u>**

For the foregoing reasons, Defendant's Motion for Summary Judgment (ECF No. 24) is **GRANTED**.   Plaintiff's Motion for Summary Judgment (ECF No. 19) is **DENIED**.   The Commissioner's final decision is **AFFIRMED**.  A separate order shall issue.


Date: September 9, 2015                              _____/s/_____
                                                                            Thomas M. DiGirolamo
                                                                            United States Magistrate Judge